Statement of Facts.

and the rate in respect to corporations of other States being higher than she imposes upon her own corporations of the same class. Such legislation would be a species of commercial warfare by one State against the others, and would be hostile to the whole spirit of the Constitution, particularly the Fourteenth Amendment, securing to all persons within the jurisdiction of the respective States the equal protection of the laws.

For the reasons which have been stated, I feel obliged to withhold my assent to the opinion and judgment of the court.

---

## HOME INSURANCE COMPANY *v.* NEW YORK.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

Argued October 25, 26, 1886. — Decided November 15, 1886.

The State of New York by statute imposed a tax upon the "corporate franchise or business" of corporations within the State, of one quarter mill. upon the capital stock for each one per cent. of dividend of six per cent. or over. The Home Insurance Company claimed exemption from this tax upon so much of its capital as was invested in bonds of the United States which, by the acts of Congress under which they were issued, were exempt from State taxation. In a proceeding to enforce the collection of the tax, the Supreme Court of New York gave judgment for its recovery, which judgment was affirmed by the Court of Appeals of that State. This court affirms the judgment by a divided court.

This was a proceeding commenced in the Supreme Court of New York to recover a tax imposed upon the plaintiff in error under the provisions of the Act of the Legislature of that State of June 1, 1880, Laws of 1880, c. 542, as amended by the Act of May 26, 1881, Laws of 1881, c. 361. The following are the material provisions of the Act of 1881 relating to the controversy.

"SECTION 1. Chapter five hundred and forty-two of the laws of eighteen hundred and eighty, entitled 'An act to provide for raising taxes for the use of the State upon certain corpo-

rations, joint-stock companies and associations,' is hereby amended so as to read as follows:

'§ 1. Hereafter, it shall be the duty of the president or treasurer of every association, corporation or joint-stock company liable to be taxed on its *corporate franchise or business*[1] as provided in section three of this act, to make report in writing to the comptroller, annually, on or before the fifteenth day of November, stating specifically the amount of capital paid in, the date, amount and rate per centum of each and every dividend declared by their respective corporations, joint-stock companies or associations, during the year ending with the first day of said month. In all cases where any such corporation, joint-stock company or association shall fail to make or declare any dividend upon either its common or preferred stock during the year ending as aforesaid, or in case the dividend or dividends made or declared upon either its common or preferred stock during the year ending as aforesaid, shall amount to less than six per centum upon the par value of the said common or preferred stock, the treasurer and secretary thereof, after being duly sworn or affirmed to do and perform the same with fidelity, according to the best of their knowledge and belief, shall, between the first and fifteenth days of November, in each year, in which no dividend has been made or declared as aforesaid, or in which the dividend or dividends made or declared upon either its common or preferred stock amounted to less than six per centum upon the par value of said common or preferred stock, estimate and appraise the capital stock of such company upon which no dividend has been made or declared, or upon the par value of which the dividend or dividends made or declared amounted to less than six per centum, at its actual value in cash, not less, however, than the average price which said stock sold for during said year; and when the same shall have been so truly estimated and appraised, they shall forthwith forward to the comptroller a certificate thereof, accompanied by a copy of their said oath

---

[1] In the Act of 1880 the words " corporate franchise or business " read " capital stock."

or affirmation, by them signed, and attested by the magistrate or other person qualified to administer the same; provided, that if the comptroller is not satisfied with the valuation so made and returned, he is hereby authorized and empowered to make a valuation thereof and to settle an account upon the valuation so made by him for the taxes, penalties and interest due the State thereon; and any association, corporation or joint-stock company dissatisfied with the account so settled, may within ten days appeal therefrom *to a board consisting of the secretary of state, attorney-general and state treasurer,*[1] which board, on such appeal, shall affirm or correct the account so settled by the comptroller, and the decision of said board shall be final; but such appeal shall not stay proceedings unless the full amount of the taxes, penalties and interest as due on said account, as settled by the comptroller, be deposited with the state treasurer.'

'§ 3. Every corporation, joint-stock company or association whatever, now or hereafter incorporated or organized under any law of this State, . . . shall be subject to and pay a tax, *as a tax upon its corporate franchise or business,*[2] into the treasury of this State, annually, to be computed as follows: If the dividend or dividends made or declared by such corporation, joint-stock company or association during any year ending with the first day of November amount to six or more than six per centum upon the par value of its capital stock, then the tax to be at the rate of one-quarter mill upon the capital stock for each one per centum of dividend so made or declared; or if no dividend be made or declared, or if the dividends made or declared do not amount to six per centum upon the par value of said capital stock, then the tax to be at the rate of one and one-half mills upon each dollar of a valuation of the said capital stock made in accordance with the provision of the first section of this act, and in case any such corporation, joint-stock company or association shall have

---

[1] In the Act of 1880 the words from "a board," to "treasurer" read "the board of equalization."

[2] The words "as a tax upon its corporate franchise or business" are not in the Act of 1880.

OCTOBER TERM, 1886.

more than one kind of capital stock, as for instance common and preferred stock, and upon one of said stocks a dividend or dividends amounting to six or more than six per centum upon the par value thereof, has been made or declared, and upon the other no dividend has been made or declared, or the dividend or dividends made or declared thereon amount to less than six per centum upon the par value thereof, then the tax shall be at the rate of one quarter-mill for each one per centum of dividend made or declared upon the capital stock, upon the par value of which the dividend or dividends made or declared amount to six or more than six per centum, and in addition thereto tax shall be charged at the rate of one and one half mills upon each dollar of a valuation, made also in accordance with the provisions of this act, of the capital stock upon which no dividend was made or declared, or upon the par value of which the dividend or dividends made or declared did not amount to six per centum.'"

An "Agreed Case" was made pursuant to the Code of New York, presenting State questions for determination, and also a Federal question. The parts of the Case which relate to the latter question are as follows :

"I. The Home Insurance Company is, and for more than a year prior to November 1, 1881, had been, a domestic fire insurance company.

"II. The capital stock of the Home Insurance Company at all times during the year ending November 1, 1881, was $3,000,000, divided into thirty thousand shares of the par value of one hundred dollars each, all full paid.

"III. In the month of January and also in the month of July, 1881, a dividend of $150,000 was declared by the said company. These were the only dividends declared or made during the year ending November 1, 1881, and amounted to ten per centum upon the par value of the capital stock thereof.

"IV. During the year 1881 the said company had part of its capital invested in bonds of the United States, being obligations of the United States, which, by the acts of Congress under which they are issued, are exempt from State taxation, viz.; on January 1, 1881, and when the dividend was declared in that

month it held such bonds of the par value of $3,300,000 ; on the first day of July, 1881, and when the dividend was declared in that month, and on November 1, 1881, and when the report hereinafter mentioned was made, it held such bonds of the par value of $1,940,000.

"V. On or before November 15, 1881, the report described in § 1 of c. 542 of the laws of 1880, as amended by c. 361 of the laws of 1881, was duly made to the then comptroller of the State of New York, on behalf of the said company.

"VI. Within fifteen days after January 1, 1882, the Home Insurance Company tendered to the then comptroller of the State of New York a tax at the rate of one and one quarter mills per cent. upon the sum of $1,060,000. The said tender was rejected by the said comptroller. . . . The said company has ever since been and now is ready and willing to pay the amount so tendered to the said comptroller if it shall be adjudged that said Acts of 1880 and 1881 are valid in respect of the tax herein controverted.

The Home Insurance Company claims: . . . (2.) That so much of the laws of New York as may require a tax to be paid upon the capital stock of the said company, without deducting from the amount so to be paid a sum bearing the same ratio thereto as the amount of the paid-in capital stock of the said company, invested in bonds of the United States, bears to the total amount of the paid-in capital stock of the said company, is unconstitutional and void."

The Supreme Court of New York at General Term adjudged that the company was liable to pay the tax. This judgment was affirmed by the Court of Appeals, 92 N. Y. 328. The case was remanded to the Supreme Court and final judgment entered there in accordance with the decision and mandate of the Court of Appeals. This writ of error was sued out to review that final judgment.

*Mr. Benjamin H. Bristow* for plaintiff in error. *Mr. David Willcox* was with him on the brief.

No tax can be imposed upon that part of defendant's capital invested in United States bonds. A State cannot burden the

operations of the national government by taxing its bonds without its consent. *McCulloch* v. *Maryland*, 4 Wheat. 316, 436; *Weston* v. *Charleston*, 2 Pet. 449; *Banks* v. *Mayor*, 7 Wall. 16; *People* v. *Commissioners*, 90 N. Y. 63. A tax upon the capital of a corporation is a tax upon the property in which the capital is invested. No part of the capital invested in United States bonds, therefore, is taxable. This is fully established in this court. *Bank of Commerce* v. *New York*, 2 Black, 620; *Bank Tax Case*, 2 Wall. 200. If, then, this be a tax upon capital, it is without application to the part of the capital stock of plaintiff in error invested in United States bonds.

Whether or not this is a tax upon capital is to be determined, not by the form of the statute, but by its effect. When the statute was first enacted the legislature merely imposed the tax. The following year it inserted the definition thereof "as a tax upon corporate franchise or business." But if the tax is, in its nature and effect, a tax upon capital, it is none the less so because of this amendment declaring it to be a tax upon franchise or business. The question is whether or not the tax is such as the legislature can impose. This obviously must be decided by the courts irrespective of any declaration as to the character of the tax by the legislature itself.

In *Brown* v. *Maryland*, 12 Wheat. 419, a State statute required all importers of foreign goods to take out a license and pay a fee. The court held that this was a regulation of commerce. The same in substance was ruled in *Ward* v. *Maryland*, 12 Wall. 418; *Welton* v. *Missouri*, 91 U. S. 275; *Webber* v. *Virginia*, 103 U. S. 344; and *Walling* v. *Michigan*, 116 U. S. 446.

In *Smith* v. *Turner* (*Passenger Cases*), 7 How. 283, a State statute provided that the health officer of the port of New York should collect from the masters of vessels a certain sum for each passenger. The moneys were to be used in supporting the Marine Hospital. Yet this was held to be a regulation of commerce.

In *Henderson* v. *Mayor of New York*, 92 U. S. 259, a State

statute provided that the owners of steamers·bringing passengers from foreign ports should give a bond for each passenger against his becoming a public charge, or, at their option, make a cash payment. It was claimed that, as the object of the provision was not taxation but protection against pauperism, it was valid as within the police power. But the court held otherwise. And to the same effect are *Chy Lung* v. *Freeman*, 92 U. S. 275; *Inman Steamship Co.* v. *Tinker*, 94 U. S. 238; *Cook* v. *Pennsylvania*, 97 U. S. 566; and *Transportation Co.* v. *Parkersburg*, 107 U. S. 691.

In the *Matter of Jacobs*, 98 N. Y. 98, a statute provided that the manufacture of tobacco in any form on any floor in a tenement house was prohibited, if any part of such floor was occupied by any persons as a residence, and violation thereof was declared a misdemeanor. The act was entitled, " An act to improve the public health by prohibiting the manufacture of tobacco in any form in tenement houses in certain cases." It was contended that this violated the constitutional provision that no person shall be deprived of his property without due process of law. In answer to this it was claimed that the law was an exercise of the police power. The court held that the declaration contained in the statute was not conclusive upon the subject.

See to the same effect *Almy* v. *California*, 24 How. 169; *Bank Tax Case*, 2 Wall. 200; *Cummings* v. *Missouri*, 4 Wall. 277, 325; *Crandall* v. *Nevada*, 6 Wall. 35; *State Freight Tax*, 15 Wall. 232; *Railroad Co.* v. *Husen*, 95 U. S. 465; *Telegraph Co.* v. *Texas*, 105 U. S. 460; *Moran* v. *New Orleans*, 112 U. S. 69; *Kentucky Railroad Tax Cases*, 115 U. S. 321, 337; *Pullman Southern Car Co.* v. *Nolan*, 22 Fed. Rep. 276, 281; *People* v. *Allen*, 42 N. Y. 404, 413; *Matter of Deansville Cemetery Association*, 66 N. Y. 569. Clearly, therefore, the declaration by the legislature that this is a tax on franchise or business is not controlling.

The statute has not the effect of imposing a tax upon franchise or business. The modes in which the franchises of a corporation may be taxed are clearly defined. It may be done by imposing a fixed sum, or " a graduated contribution

proportioned either to the value of the privileges granted, or to the extent of their exercise, or to the results of such exercise." *State Tax on Railway Gross Receipts*, 15 Wall. 284; *Delaware Railroad Tax*, 18 Wall. 206, 231. These provisions of the act do not impose a fixed sum. Nor do they impose a contribution proportioned to the extent of the exercise of the franchise — to the amount of business done. That species of tax is imposed by § 5 of the same act. But these provisions do not refer to the amount of the business in any way. Is this, then, "a contribution proportioned to the value or results of the privileges granted"?

The franchise is "the right to use the tangible property in a special manner for the purposes of gain." *State Railroad Tax Cases*, 92 U. S. 575. It is itself a part of the property of the corporation but quite distinct and separate from its tangible property. *Gordon* v. *Appeal Tax Court*, 3 How. 133, 150; *Wilmington Railroad* v. *Reid*, 13 Wall. 264, 265. It is a thing "capable of appraisal and ascertainable by evidence, and is frequently made the subject of taxation by the sovereign power. It is a right separate and distinct from the capital and moneyed assets of a corporation, and as to the value of which they furnish no evidence." *Conaughty* v. *Saratoga Bank*, 92 N. Y. 401. See to the same effect *Veazie Bank* v. *Fenno*, 8 Wall. 533, 541, 547; *Monroe Savings Bank* v. *Rochester*, 37 N. Y. 365, 367; *Porter* v. *Rockford &c. Railroad Co.*, 76 Ill. 561, 578. Its value is readily ascertained. It is determined by subtracting from the total actual value of the capital stock the total value of all items of property other than franchise. The remainder is, of course, the value of the franchise. This method has the approval of this court. *State Railroad Tax Cases*, 92 U. S. 575, 602–607. It is approved elsewhere as well. *Spring Valley Works* v. *Schottler*, 62 Cal. 69, 117; *Burke* v. *Badlam*, 57 Cal. 594; *San José Company* v. *January*, 57 Cal. 614. Here neither the value of this part of the property of the corporation nor the results of its use are in any way ascertained.

It is claimed that this is a tax upon the franchise or its results upon the ground that the tax is measured by the profits

resulting from the use of the franchise — by the capacity of the company to declare dividends. This is clearly erroneous. The tax is a percentage upon that part of defendant's income which it has distributed in dividends — its net income or profits — without discrimination as to the source thereof. This, of course, is a tax upon the property from which the income arises. *Bank of Kentucky* v. *Commonwealth*, 9 Bush, 46; *Opinions of Justices*, 53 N. H. 634; *People* v. *Commissioners of Taxes*, 90 N. Y. 63; *Weston* v. *Charleston*, 2 Pet. 449, 472, 475, 478. But the franchise is only one part of defendant's property. It is only in part the source of the dividends or net profits. They are the product of all the property. Indeed, from the franchise without the other property no dividends or profits could possibly be made. This tax upon the entire amount of such dividends or profits is, therefore, a tax upon the value or result of the franchise only to the same extent and in the same manner that it is a tax upon the value or result of every other item of defendant's property including its United States bonds. And, as it includes property not taxable, it cannot be sustained as a tax on the franchise, *Santa Clara County* v. *Southern Pacific Railroad*, 118 U. S. 394.

But the State claims that this court is already committed to the view that this is a tax upon franchise. And the court below placed its decision chiefly upon this ground. The cases relied upon are: *Society for Savings* v. *Coite*, 6 Wall. 594; *Provident Institution* v. *Massachusetts*, 6 Wall. 611; and *Hamilton Co.* v. *Massachusetts*, 6 Wall. 632.

These cases were decided upon two grounds. (1) It was held that a tax consisting of a percentage upon the deposits made with a savings bank, is a tax upon its franchise or business, and not a tax upon the property in which such deposits may be invested after they are received. (2) It was held, further, that the decision of the State court, although criticised in one of the cases as "founded in unsubstantial distinctions," was binding upon this court. Whatever may be thought of the soundness of this, (see *Louisville and Nashville Railroad* v. *Palmes*, 109 U. S. 244,) it has no present application; for it is not sought to sustain the pres-

ent tax by any decision of the courts of the State construing the statute by which it is imposed.

The former ground, it has been claimed, controls the present case. Clearly this cannot be so. The question now involved is entirely different. There the tax was a percentage upon the deposits, "simply the sums received, wholly irrespective of the disposition made of the same." 6 Wall. 627. The liability arose by reason of the receipt of the deposit. It was quite immaterial what became of the money after it was received. That and that alone was selected by the legislature for taxation at a percentage of the amount received. The statute contemplated or related to nothing occurring thereafter. These were the considerations which led the court to hold that the tax was laid upon the franchise or business of receiving money on deposit — upon "the extent to which they, (the banks,) had exercised the privileges granted by their charters." 6 Wall. 632.

In the present case the tax is not measured by the moneys received by defendant — by the volume of its business, the extent to which it has exercised its franchise; but it is a percentage compounded of two factors, the capital and the dividends. That is to say, it is measured by defendant's permanent investment in the business and the net profits realized from its entire property. Until profits are acquired there can be no tax. The tax is measured solely by their amount. Clearly, the ultimate burden rests upon the property of defendant invested in part in United States securities. That, therefore, is the subject of the tax. *State Freight Tax Case*, 15 Wall. 232.

The decision that even a tax consisting of a percentage upon all sums received by a savings bank was a tax upon franchise, was arrived at by a majority of the court, and in the face of emphatic dissent by three of the judges. That decision, therefore, should not be regarded as expressing the views of the court, save in cases identical in their facts. Much less can it be regarded as committing the court to the view that a tax upon the defendant which is a percentage upon its capital and surplus earnings distributed as dividends,

is a tax upon corporate franchise. On the contrary, the court repeated in those cases the rule laid down in the Bank Tax Case that "a tax levied under a law of the state" enacting that corporations shall "be liable to taxation on a valuation equal to the amount of their capital and their surplus earnings (is) a tax on the property of the corporation." 6 Wall. 629. These authorities, therefore, are wholly without present application. Neither upon principle nor authority has the statute the effect of imposing a tax upon franchise or business.

This is, in fact, a tax upon capital at its actual value, and therefore does not apply to that part of defendant's capital invested in United States bonds. It is clear from an examination of the statutes that the place where the capital is employed — not the place where the franchises are granted — controls the amount of the tax.

Unless the tax is on capital, the statute must have most incongruous and unequal effects. For the purposes of the tax, corporations are of three classes: (1) those which have paid less than six per cent. dividends; (2) those which have paid six per cent.; and (3) those which have paid more than six per cent. In the case of corporations paying less than six per cent. the act provides that there shall be a tax upon the "actual value" of their capital. It is settled that a tax in that form is a tax upon the property, in which the capital is invested, and that corporations upon which it is imposed are entitled to deduct their United States bonds from the amount of the assessment. *Bank of Commerce* v. *New York*, 2 Black, 620; *Bank Tax Case*, 2 Wall. 200. But if the tax upon corporations paying six per cent. or more be a franchise tax, such corporations will not be entitled to the deduction for their United States bonds to which those paying less than six per cent. are entitled. Still further, where a corporation has paid less than six per cent. upon its common stock and that amount or more upon its preferred stock, it will be entitled to exemption as to its common stock for the amount of its capital invested in United States bonds, but not as to its preferred stock, although all its capital may be so invested.

If, on the other hand, the tax be a tax upon capital, the statute leads to no such incongruous and unequal results. The graduated tax results in a rule which works uniformly in all cases. Each corporation is taxed as nearly as may be on the actual value of its capital stock, both common and preferred.

The court below meets this argument by saying that the legislature has power to impose unequal taxes. This may be so. But the same court had already laid down the rule that in matters of taxation "it is a sacred duty to impose the burdens equally, and to enforce the maxim of law and ethics that equality is equity." *People* v. *Commissioners of Taxes*, 76 N. Y. 64, 71. "Equality of taxation is a fundamental principle of our government which no legislation, in the absence of the most explicit provisions, will be presumed to have intended to violate." *People* v. *Supervisors of New York*, 20 Barb. 81, 88, *S. C.* affirmed, 16 N. Y. 424. That, doubtless, is the principle of construction to be followed here. The court will, if possible, construe the statute so as to impose its burden justly and equally. Especially should this be so when the opposite construction is sought solely for the purpose of imposing a burden upon property which this court has uniformly held to be exempt from taxation by the States.

The statute itself admits of no construction other than that which will produce this result. The tax is a percentage upon the capital. The amount of this percentage varies. But the subject-matter taxed remains the same. The rate of tax increases or diminishes with the rate of dividend. There is no method of determining, with absolute exactness, the actual value of the capital stock of a corporation during any considerable period. But no surer standard can be suggested than its results during that period — the dividends which it has earned. *Oswego Starch Factory* v. *Dolloway*, 21 N. Y. 449; *Commonwealth* v. *Cleveland &c. Railroad*, 29 Penn. St. 370; *Lehigh Crane Iron Co.* v. *Commonwealth*, 55 Penn. St. 448. A tax varying in proportion to the dividends must vary in proportion to the actual value of the capital stock. The provisions of this statute have been judicially construed in accord-

ance with these views. They were copied literally from a statute of Pennsylvania, Laws of 1879, p. 114, § 4, and have long existed there in the same substantial form : Laws of 1844, p. 498, § 33; 1859, p. 529; 1868, p. 109, § 4. It is well settled there that they impose a tax upon the property of the corporation, *Westchester Co.* v. *County of Chester*, 30 Penn. St. 232; *Lackawanna Co.* v. *Luzerne County*, 42 Penn. St. 424, 430; *Phœnix Iron Co.* v. *Commonwealth*, 59 *Penn. St.* 104; *Commonwealth* v. *Pittsburg, Fort Wayne &c. Railroad*, 74 Penn. St. 83; *Catawissa Co.'s Appeal*, 78 Penn. St. 59; *Coatesville Gas Co.* v. *County of Chester*, 97 Penn. St. 476, 481; and that the dividend of profit earned by the stock is but a means of ascertaining its value. *Lehigh Co.* v. *Commonwealth*, 55 Penn. St. 448, 451; *Commonwealth* v. *Standard Oil Co.*, 101 Penn. St. 119. The Pennsylvania statute was before this court in *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196, and was then regarded as imposing "a tax upon the capital" of corporations affected. The act comes precisely within the rules laid down above in *Bank of Commerce* v. *New York*, 2 Black, 620, and the *Bank Tax Case*, 2 Wall. 200. Indeed, the tax in the latter case possessed in a much greater degree than the present, the character of a tax upon franchise. For there the tax was upon the amount of the stock. Even if, by reason of losses, the capital had possessed little or no value; it would equally have been taxable. But here, as has been shown, the tax depends entirely upon the actual value.

If, however, defendant be taxable upon the basis of its entire capital, including the bonds, the tax is repugnant to the Fourteenth Amendment of the Constitution of the United States.

It is provided by the Fourteenth Amendment that no "State shall deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." And the defendant is a person within the meaning of this provision. *County of Santa Clara* v. *Southern Pacific Railroad*, 118 U. S. 394; *County of San Mateo* v. *Southern Pacific Railroad*, 13 Fed. Rep. 722, 747, 748, 762.

Inequality of taxation is such a denial of equal protection. This was ruled in *Strauder* v. *West Virginia*, 100 U. S. 303; *Exchange Bank* v. *Hines*, 3 Ohio St. 1; *People* v. *Weaver*, 100 U. S. 539; *Bank Tax Case*, 2 Wall. 200.

It is suggested that the legislature has power to classify corporations for purposes of taxation. No doubt it may divide them into as many classes as the different pursuits followed by them may require. *Railroad Tax Cases*, 92 U. S. 575. But there can be no classification by arbitrary rules among those engaged in the same business, in the same locality. There can be no subdivisions merely according to wealth or prosperity. This does not satisfy the requirement of uniformity. These rules are well established. See *Gilman* v. *Sheboygan*, 2 Black, 510; *Albany City Bank* v. *Maher*, 9 Fed. Rep. 884; *County of Santa Clara* v. *Southern Pacific Railroad*, 18 Fed. Rep. 385, 396, 409, 439; *Dundee Co.* v. *School District*, 19 Fed. Rep. 359; *Oliver* v. *Washington Mills*, 11 Allen, 268; *Stuart* v. *Palmer*, 74 N. Y. 183, 189; *State* v. *Readington Township*, 36 N. J. L. 66, 70; *Lexington* v. *McQuillan*, 9 Dana, 513; *S. C.* 35 Am. Dec. 159; *Howell* v. *Bristol*, 8 Bush, 493, 498; *Attorney General* v. *Winnebago Co.*, 11 Wis. 34, 42; *New Orleans* v. *Home Ins. Co.*, 23 La. Ann. 449; *In re Ah Fong*, 3 Sawyer, 144, 145; *Ah Kow* v. *Nunan*, 5 Sawyer, 552; *Parrott's Case*, 6 Sawyer, 349; *Louisville & Nashville Railroad* v. *Railroad Commissioners*, 19 Fed. Rep. 679.

Upon principle the rule in regard to uniformity of taxation upon franchises must be the same as in regard to taxes upon any other property. There can be no more reason why arbitrary distinctions should be made between persons owning that species of property than between the owners of property of any other kind. And it is so held. *County of San Mateo* v. *Southern Pacific Railroad*, 8 Sawyer, 238; *Portland Bank* v. *Apthorp*, 12 Mass. 252, 258; *Commonwealth* v. *People's Savings Bank*, 5 Allen, 428, 431; *Oliver* v. *Washington Mills*, 11 Allen, 268; *Orleans Parish* v. *Cochran*, 20 La. Ann. 373; *Louisiana* v. *Merchants' Ins. Co.*, 12 La. Ann. 802; *East St. Louis* v. *Wehrung*, 46 Ill. 392.

If, then, the tax upon this defendant be a tax upon fran-

chise, the statute is unconstitutional. It denies to defendant equal protection of the laws.

If this tax be upheld, the exemption from State taxation of United States bonds in the hands of corporations, is practically gone. Adopting the form of this statute and calling the tax a tax upon franchise or business, any State may impose a tax to be computed upon the capital at whatsoever rate it sees fit. For "it must always be remembered that, if the right to impose a tax at all exists, it is a right which in its nature acknowledges no limits." *Bank of Commerce* v. *New York*; 2 Black, 620. And such tax must be paid, although all the capital be invested in United States bonds. Surely this court will not suffer the great principle of public policy that the States have no power, by "taxation or otherwise, to retard, impede, burden or in any manner control the operations of the national government — " *McCulloch* v. *Maryland*, 4 Wheat. 316, 436 ; *Lane County* v. *Oregon*, 7 Wall. 71, 77, — to be thus lightly frittered away.

*Mr. Denis O'Brien, Attorney General of New York*, for defendant in error.

I. The tax imposed upon the plaintiff in error was a tax upon its franchises and not upon its property or capital stock. Prior to the passage of the Acts of 1880 and 1881, corporations were assessed and taxed in New York upon their capital stock. It was the intention of the legislature by these acts to formulate a new and distinct scheme of taxation for all the corporate, associate, or joint stock bodies included within the terms of its provisions.

The law of 1881, on which this question arises, recognizes the clear distinction which must be made in a legislative scheme of taxation where United States securities are owned by the corporation taxed. The law distinctly states that the plaintiff in error shall pay a tax as a tax upon its corporate franchise or business, into the treasury of the State annually, and then provides the method of computation.

Franchises are special privileges conferred by government upon individuals ; no franchise can be held which is not

derived from a law of the State. *Bank of Augusta* v. *Earle*, 13 Pet. 519, 595.

The State may impose taxes upon the corporation as an entity existing under its laws, as well as upon the capital stock of the corporation, or its separate corporate property; and the manner in which its value shall be assessed, and the rate of taxation, however arbitrary or capricious, are mere matters of legislative discretion. *The Delaware Railroad Tax*, 18 Wall. 206. Nothing can be more certain in legal decision than that the privileges and franchises of a private corporation . . . may be taxed by a State for the support of the State government. Authority to that effect resides in the State independent of the Federal government. *Society for Savings* v. *Coite*, 6 Wall. 594; *State Railroad Tax Cases*, 92 U. S. 575.

The tax in question is a franchise tax because it is immaterial as to the value of the property of the corporation, and because it is immaterial as to the value of its capital stock. The amount of the tax does not depend upon the whole tax to be raised in the State; the assessment is made on the value of the franchise conferred, and is measured by the dividend paying power. The capital stock is simply used as a basis for computation.

The plaintiff in error is a domestic corporation; it exists by the laws of the State of New York; its residence is therein; there is the *situs* of its capital stock and franchises. It cannot be seriously contended that the State may not tax it in some form. It has chosen this method, and its action is final. This tax, therefore, being a tax upon the franchise of the plaintiff, it matters not how its capital stock or property may be invested, whether in United States securities or otherwise. *People* v. *The Commissioners*, 4 Wall. 244; *National Bank* v. *Commonwealth*, 9 Wall. 353; *Van Allen* v. *The Assessors*, 3 Wall. 573.

But we are not without the decision of this court upon this question. A savings-bank invested part of its deposits in securities of the United States, declared by Congress to be exempt from taxation by State authority. The State of Con-

necticut required savings societies to pay three quarters of one per cent. on the total amount of deposits on a given day. It was held that such tax was on the franchise and not on property; that it was valid; that the society was not exempt from taxation to the extent of the deposits so invested. *Society for Savings* v. *Coite*, 6 Wall. 594.

Under a similiar statute a savings bank in Massachusetts, which had part of its deposits invested in Federal securities, was held liable to a tax on account of such deposits. *Provident Institution* v. *Massachusetts*, 6 Wall. 611. A statute of Massachusetts required corporations having a capital stock to pay a tax of a certain percentage upon the excess of the market value of all such stock over the value of its real estate and machinery. The Hamilton County Manufacturing Company showed that the cash market value of its capital stock did not exceed by more than $263,997 the value of its real estate and machinery, provided that the amount of securities of the United States was not included. The State taxed the whole amount of excess, including the amount of Federal securities. It was held that the tax was upon the franchise of the company and was lawful. *Hamilton Co.* v. *Massachusetts*, 6 Wall. 632.

The Bank Tax Case of New York expressly distinguishes between a property and a franchise tax. *Bank Tax Case*, 2 Wall. 200.

II. The tax in question being upon the franchises of the plaintiff in error, the first section of the Fourteenth Amendment to the United States Constitution has no application. There is nothing in this case showing an unequal exaction. It is true that in one sense one corporation may pay more than another, but in a comparative sense the exaction is equal — in proportion to their earning capacity and the value of their franchises they are taxed. Even were it not so, a franchise tax is not within the rule of uniformity. *Ducat* v. *Chicago*, 10 Wall. 410. This contention is based almost entirely upon a recent decision rendered in the case of *County of San Mateo* v. *Southern Pacific Railroad*, 13 Fed. Rep. 722. The county of San Mateo brought an action against the

Southern Pacific Railroad Company to recover State and county taxes assessed upon the property of the company upon which there was a mortgage. By the laws of California whenever an individual holds property incumbered with a mortgage, he is assessed at its value, after deducting from it the amount of the mortgage. If a railroad company holds property subject to a mortgage, it is assessed at its full value, without any deduction for the mortgage. The railroad company refused to pay said taxes upon several grounds, one of which was that there was a discrimination made, palpable and gross, between the taxation of the property of the individual and that of the corporation, and that thereby the corporation was denied the equal protection of the laws guaranteed by the Fourteenth Amendment to the Federal Constitution.

The court held: (1) That private corporations are persons within the meaning of the first section of the Fourteenth Amendment. (2) That as such persons, they are entitled, so far as their *property* is concerned, to the equal protection of the laws. (3) That this equal protection forbids unequal exactions of any kind, and among them that of unequal taxation. These are the main points affecting the case under consideration.

It is respectfully insisted that the broad scope given to the first section of the Fourteenth Amendment, by this decision, is not sustainable on principle or reason; that it was intended simply and solely to prevent discrimination against the negroes. In the *Slaughterhouse Cases*, 16 Wall. 36, 81, this court says: "In the light of the history of these amendments, and the pervading purpose of them which we have already discussed, it is not difficult to give a meaning to this clause. The existence of laws in the States where newly emancipated negroes resided, which discriminated with gross injustice and hardships against them as a class, was the evil to be remedied by t us clause, and by it such laws are forbidden. . . . We doubt very much whether any action of a State, not directed by way of discrimination against the negroes as a class, or on account of their race, will ever be held to come within the purview of this provision."

But conceding, for the sake of argument, that the adoption of the Fourteenth Amendment has restricted the States in the exercise of the taxing power, that decision in no way affects the power of the State to classify the property within its jurisdiction for the purpose of taxation. The statutes of New York simply aggregate certain corporations into one class of taxpayers, and impose upon them a tax which is uniform as to the whole class. It is sufficient that the tax imposed be uniform and equal as to the class upon which it operates. *State Railroad Tax Cases,* 92 U. S. 575, 611.

A State law for the valuation of property and the assessment of taxes thereon, which provides for the classification of property, subject to its provisions, into different classes, which makes for one class one set of provisions as to modes and methods of ascertaining the value and as to right of appeal, and different provisions for another class as to those subjects, but which provides for the impartial application of the same means and methods to all the constituents of each class, so that the law shall operate equally and uniformly on all persons in similar circumstances, denies to no person affected by it "equal protection of the laws," within the meaning of the Fourteenth Amendment to the Constitution. *Kentucky Railroad Tax Cases,* 115 U. S. 321.

But the San Mateo case is a direct authority for the imposition of the tax in this case. There the tax was one on *property* — here one on the *franchises.* "Taxation on *business* in the form of *licenses* may vary according to the calling or occupation licensed, and the extent of business transacted." 13 Fed. Rep. 737. The distinction is well pointed out by Mr. Justice Clifford, in his opinion in *Provident Institution* v. *Massachusetts,* 6 Wall. 611, 631. "Franchise taxes are levied directly by an act of the legislature, and the corporations are required to pay the amount into the State treasury. They differ from property taxes, as levied for state and municipal purposes, in the basis prescribed for computing the amount, in the manner of assessment and in the mode of collection." The California decision, therefore, does not apply to this case.

MR. CHIEF JUSTICE WAITE announced that the judgment of the Supreme Court of the State of New York was

*Affirmed by a Divided Court.*

------

SHIPMAN *v.* DISTRICT OF COLUMBIA.

DISTRICT OF COLUMBIA *v.* SHIPMAN.

APPEALS FROM THE COURT OF CLAIMS.

Argued November 3, 1886. — Decided November 15, 1886.

Shipman did a large amount of work for the District of Columbia under a contract, and was paid for it according to its terms. He sued the District in the Court of Claims, in equity, alleging a mistake in the contract, asking to have it reformed, and claiming to recover a large sum. The District answered and filed large counterclaims for alleged overpayments. The Court of Claims refused to reform the contract, but gave judgment for Shipman in the sum of $652.11, being the balance on the adjustment of such claims and counterclaims as were allowed by the court. See 18 C. Cl. 291. Both parties appealed. On the facts found in the record, this court affirms the judgment of the Court of Claims.

*Mr. W. Willougby* for Shipman.

*Mr. Solicitor General* for the District of Columbia.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The judgment in this case is affirmed. No disputed questions of law are involved, and our views of the facts are so well expressed in the carefully prepared opinion of the Court of Claims found in *Shipman* v. *District of Columbia,* 18 C. Cl. 291, that we deem it unnecessary to do more than to refer to that opinion for the reasons of our decision. See Appendix.

*Affirmed.*